**KEEN MOUNTAIN CONSTRUCTION CO., INC., Plaintiff,**

v.

**Gary W. CHAMBERS et al., Defendants.**

**Civ. A. No. 79–0183–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

Dec. 18, 1979.

Mark M. Lawson, White, Elliott & Bundy, Bristol, Va., for plaintiff.

Dennis W. Heileman, Castlewood, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is presently before the court on plaintiff's and defendants' cross motions for summary judgment. The subject of this action concerns an alleged violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce. Therefore, this court has jurisdiction pursuant to 29 U.S.C. § 185(a).[1] Below are the pertinent facts involved:

### I.

Plaintiff, Keen Mountain Construction Company, is a coal mining construction business incorporated under the laws of Virginia and has its principal office at Keen

---

1. Title 29 U.S.C. § 185(a) states:

    Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Mountain, Virginia. Defendant Chambers is a natural person presently residing at Keen Mountain, Virginia. The two other defendants are labor unions associated with the United Mine Workers of America. Both unions do business in Virginia with Local 6843 having its principal office in Oakwood, Virginia, and District 28 having its principal office in Castlewood, Virginia.

Plaintiff and defendants are signatories to the National Coal Mine Construction Agreement (hereinafter referred to as the Agreement) and were so bound by the Agreement at all times material to this action.[2]

Defendant Chambers was an employee of plaintiff until August 4, 1978, at which time he was laid off by plaintiff. On August 5, 1978, Chambers became an employee of the Mac Construction Company.

On September 15, 1978, Chambers filed a written grievance contending that plaintiff had violated the Agreement by recalling a man with lesser seniority before recalling the more senior Chambers.[3] Plaintiff responded by arguing that Chambers lost his seniority status by voluntarily quitting;[4] that Chambers was not on the Employer's Recall Panel because he failed to submit a Standardized Layoff Form;[5] and, that Chambers' written grievance was not timely filed.[6] Chambers countered this response by contending that he did not voluntarily quit; that he did not submit a layoff form

---

**2.** This Agreement, as negotiated by the United Mine Workers of America (hereinafter U. M. W. A.), and the Association of Bituminous Contractors (hereinafter Association), was effective April 6, 1978. Plaintiff is a signatory to the Agreement by virtue of being a member of the Association and defendant unions are signatories to the Agreement by virtue of being a Local and District in the U. M. W. A. International Union. Defendant Chambers is bound by the terms of this Agreement because he was a U. M. W. A. member employed by plaintiff. *See* Agreement, Article I.

**3.** Article XVI of the Agreement provides in part:

*Section (a)* Definition

An employee's seniority shall be based on his length of service in the coal mine construction industry with the Employer, and ability to step into and perform the work of the job at the time the job is awarded. An employee on the panel of his Employer shall continue to accrue seniority while on the panel. The seniority of any employee established under a predecessor to this Agreement shall not be affected by this Section.

*Section (b)* Reduction in Force

When the work force is reduced at a construction site, employees at that project site with the greatest seniority as defined in Section (a) shall be retained provided they can perform the work which remains to be done at that project site. When the work force is reduced at a construction project site, employees at that project site who would otherwise be laid off, but who have greater seniority as defined in Section (a) than employees in other classifications, shall have the option of either being retained provided they can perform the work which remains to be done at the project site, or being laid off. Employees laid off because of the reduction in force

at that project shall be placed on the panel of the Employer. The Employer shall furnish a copy of the Standardized Layoff Form to each employee at the time he is laid off. The employee shall immediately sign the receipt acknowledging that he received the Form.

Prior practice of the Employer with respect to District wide layoffs may be continued in those UMWA Districts where the Employer has followed a practice of reducing its work force District-wide.

. . . . .

*Section (e)* Recall from the Employer's Panel

Panel members shall be returned to work to projects in their home UMWA districts and other UMWA districts in which they have indicated they will accept recall in accordance with Section (a) and Section (f)(1). Either notice of recall or confirmation of notice of recall shall be made to the employee's last known address by certified mail, registered mail, telegram, or mailgram.

**4.** Article XVI, § (1), of the Agreement provides in part:

An employee's seniority with his Employer shall be terminated for any of the following reasons: (1) voluntary quit; . . .

**5.** Article XVI, § (c), of the Agreement provides in part:

Within five days after the employee receives the Standardized Layoff Form, he must fill out the Form and submit it to the Employer.

**6.** Article XXI, § (e), provides:

Any grievance which is not filed by the aggrieved party within fifteen (15) calendar days of the time when the employee reasonably should have known it, shall be denied as untimely.

because plaintiff never furnished him one;[7] and, that the grievance was timely filed.

This dispute was submitted for an arbitration hearing on November 14, 1978. In an opinion dated November 30, 1978, the arbitrator, Francis W. Flannagan, ruled that plaintiff had not violated the Agreement by recalling the lesser senior man. It was held that Chambers was not on the panel because a layoff form was never executed. However, the arbitrator did rule that Chambers "shall be allowed ten days from this date in which to execute a layoff slip should he so desire, and, thereafter, if he so elects, he shall be placed on the panel and recalled in accordance with the labor agreement provisions for recall from the panel."

## II.

The issue currently in dispute concerns the arbitrator's ruling that allows Chambers to execute a layoff form. Plaintiff argues that the arbitrator exceeded his jurisdiction under the terms of the Agreement by permitting Chambers to execute a "Standardized Layoff Form" at such a late date. It is contended that Chambers lost his panel rights under the Agreement, Article XVI, § (c), by failing to complete and submit a layoff form to plaintiff within five days of receiving the form.[8] Since it was held that plaintiff had not violated the Agreement, plaintiff states that the arbitrator had no authority to modify the time limitation set forth in the Agreement.[9]

Defendants counter plaintiff's allegations by arguing that the arbitrator's award was based entirely on his interpretation of the Agreement. Since the award drew its essence from the Agreement, it is contended,

the court does not have the power to review its content.

## III.

Plaintiff is of the opinion that a proper standard for judicial review of arbitration awards arising under the Labor Management Relations Act is "error apparent on the face of the award." A Virginia statute, Va.Code Ann. § 8.01–580 (Repl.Vol. 1977), has been cited as authority for that proposition. That provision states:

No such award shall be set aside, except for errors apparent on its face, unless it appear to have been procured by corruption or other undue means, or that there was partiality or misbehavior in the arbitrators or umpires, or any of them. But this section shall not be construed to take away the power of courts of equity over awards.

However, contrary to plaintiff's assertion, this state provision has no applicability to the case at bar. The United States Supreme Court has held that the substantive law to be applied in suits brought under 29 U.S.C. § 185(a) "is federal law, which the courts must fashion from the policy of our national labor laws." *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). *See also Howard Johnson Co., Inc. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 255, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974). *Cf. International Brotherhood of Teamsters v. Washington Employers, Inc.*, 557 F.2d 1345 (9th Cir. 1977) (state law was the substantive law of the decision in which the parties specifically requested the arbitrator to apply certain

---

7. Article XVI, § (b), of the Agreement provides in part:

  The Employer shall furnish a copy of the Standardized Layoff Form to each employee at the time he is laid off.

8. *See* note 5 *supra*.

9. In its complaint, plaintiff also argued that since the arbitrator found Chambers failed to submit a layoff form and accepted other employment then, by implication, it was determined that Chambers had voluntarily quit his

job and, therefore, lost his seniority status under the Agreement. Article XVI, § (1). Upon review of the record, this court is of the opinion that the arbitrator ruled that plaintiff "believed" Chambers voluntarily quit. There is no ruling in the arbitrator's opinion that Chambers actually voluntarily quit. It was only held that, through no fault of plaintiff, a layoff form was not completed and submitted. This court will not rewrite the arbitrator's opinion to give effect to Article XVI, § (1), of the Agreement.

state statutes). Therefore, federal common law will be applied to the case at bar.[10]

## IV.

Central to this case is the scope of judicial review over an arbitrator's award considered "final" by the underlying collective bargaining agreement.[11] In the *Steelworker's Trilogy*, a set of three decisions rendered by the United States Supreme Court on the same day, the Court considered the parameters of an arbitrator's authority to render such awards and the proper role of federal courts in reviewing such awards. *See United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

■ The short answer to this issue is that the interpretation of the Agreement is within the province of the arbitrator and the court is not to tamper with the award unless the arbitrator has exceeded the jurisdiction granted him in the Agreement. After all, "[i]t is the arbitrator's construction which was bargained for; . . . the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel*, 363 U.S. at 593, 80 S.Ct. at 1362. *See also Crigger v. Allied Chemical Corporation*, 500 F.2d 1218, 1219 (4th Cir. 1974).

■ The strong federal policy of settling labor disputes by arbitration is protected by resolving all doubtful awards in the framework of contract interpretation. For example, "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may

have exceeded his authority, is not a reason for refusing to enforce the award." *Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361. Furthermore, "[a]rbitrators have no obligation to the court to give reasons for an award." *Id.*

■ Arbitration should be viewed as a continuation of collective bargaining, "a means of solving the unforeseeable by molding a system of private law . . . a vehicle by which meaning and content are given to the collective bargaining agreement." *Warrior & Gulf*, 363 U.S. at 581, 80 S.Ct. at 1352. Indeed, it is within the arbitrator's authority to create a common law of the shop. It follows that federal courts do not have the authority to confine an award to the express provisions of the Agreement. *Id.*

■ This great deference allowed an arbitrator is especially prominent when it comes to formulating remedies. *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358. In fact, the Fourth Circuit Court of Appeals has held that when "the agreement is silent as to remedies, the fashioning of an appropriate remedy is not an addition to the obligations imposed by the contract." *Tobacco Workers International Union v. Lorillard Corporation*, 448 F.2d 949, 956 (4th Cir. 1971). *See also Fabricut, Inc. v. Tulsa General Drivers*, 597 F.2d 227, 229 (10th Cir. 1979). In other words, an arbitrator may create a new remedy if it is not prohibited by the Agreement or if the underlying cause is not provided for in the Agreement.

■ To show that an arbitrator has exceeded his jurisdiction, the complaining party must prove that the award is not drawn from the "essence" of the Agreement. *See Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358. Courts have developed several tests in construing this "essence"

---

10. This is not to say that state law will never be applicable in actions under 29 U.S.C. § 185(a). Indeed, "state law, if compatible with the purpose of [29 U.S.C. § 185(a)], may be resorted to in order to find the rule that will best effectuate the federal policy." *Lincoln Mills*, 353 U.S. at 448, 77 S.Ct. at 918. In this

case, however, plaintiff has not shown that the Virginia statute will effectuate federal policy.

11. Article XXI, § (g), states in part:
Settlements reached at any step of the grievance procedure shall be final and binding on both parties. . . .

standard.[12] In the case at bar, plaintiff employs two intertwined tests: (1) an award cannot be contrary to the express language of the Agreement; and, (2) an award will not be enforced if there is no rational way the arbitrator's interpretation can be construed from the Agreement. *See generally Fabricut*, 597 F.2d at 229; *Kewanee Machinery Division v. Local Union No. 21*, 593 F.2d 314, 318 (8th Cir. 1979); *International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers Association*, 574 F.2d 783, 786 (3rd Cir. 1978).

Plaintiff argues that Chambers' failure to comply with the filing requirements of Article XVI, § (c),[13] bars him from subsequently being placed on the panel. But, by considering that such failure to file did not strip Chambers of his seniority[14] and by recognizing the symbiotic relationship between seniority and recall rights, it is reasonable to conclude that a remedy should exist to give effect to Chambers' seniority rights. To rule otherwise, the arbitrator could have reasoned,[15] would give rise to an impotent right not contemplated by the Agreement.

In so construing the panel and seniority provisions, it cannot be said that the arbitrator acted in contravention of the express language of the panel provision. Rather, the panel provision was interpreted in light of the seniority provision. Hence, "[i]t is a question of interpretation and construction under the facts—what relationship exists between the two provisions." *Kewanee Machinery*, 593 F.2d at 318. Since the arbitrator's award is not in contravention of an express provision of the Agreement, the award will not be vacated unless there is no rational way that the arbitrator's interpretation can be construed from the Agreement.

The particular facts in this case buttress the validity of the award. The Arbitrator's Opinion shows a conflict in the evidence as to whether lay off slips were available when Chambers was laid off. Later, Chambers was offered the opportunity to execute a lay off slip but refused to do so because he felt his seniority rights were protected by filing the grievance. It should also be noted that very few of the employees executed these slips at the time they were laid off because it was general opinion that the period of unemployment would be short. Subsequently, plaintiff sent notice by registered mail to all employees, except Chambers, to come in and execute a lay off slip.

It was probably the arbitrator's finding that the failure to execute a lay off slip was neither party's fault. From this, it could have been concluded that since plaintiff permitted late filing by the other employees, it was only equitable that Chambers' seniority rights be given effect. This conclusion is rational when considered in light of Chambers' reliance upon the grievance proceeding to protect his seniority rights.

Therefore, considering the great deference afforded arbitrators in formulating remedies, *see Fabricut*, 597 F.2d at 229;

---

12. Other tests, not relevant to the case at bar, include: Arbitrators exceed their authority when the award is in contravention of federal law, *see World Airways, Inc. v. International Brotherhood of Teamsters*, 578 F.2d 800 (9th Cir. 1978); and, the award is invalid when it is the product of certain misconduct or the arbitration proceeding suffers from certain infirmities. *See generally International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers Association*, 574 F.2d 783, 786 (3rd Cir. 1978).

13. *See* note 5 *supra*.

14. Article XVI, § (1), provides:
An employee's seniority with his Employer shall be terminated for any of the following reasons: (1) voluntary quit; (2) discharge for cause; (3) failure to report for work when recalled to work in his home UMWA district or any other UMWA district in which he has indicated he will accept recall.
In addition, an employee laid off by an Employer by whom he was hired through a District Panel shall lose seniority rights with that Employer if he is laid off and remains on that Employer's panel for three hundred sixty-five (365) consecutive days.

15. The Arbitrator's Opinion did not give any rationale for his award. While it would be better practice for an arbitrator to state his rationale, he is under no obligation to do so. *See Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. 1358.

538

*Lorillard*, 448 F.2d at 956, it is concluded that an arbitrator may fashion a remedy and, thereby give effect, to a right not so expressly provided for in the Agreement. Hence, it is the opinion of this court that the award was proper in the case at bar.

In accordance with the rationale stated above, defendants' motion for summary judgment is granted.