**LOCAL UNION 1470, UNITED MINE WORKERS OF AMERICA, Plaintiff,**

v.

**CLINCHFIELD COAL COMPANY, Defendant.**

Civ. A. No. 79–0021–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Feb. 7, 1980.

Walton D. Morris, Jr., Big Stone Gap, Va., for plaintiff.

Stephen M. Hodges, Penn, Stuart, Eskridge & Jones, Abingdon, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The subject of this action concerns an alleged violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce. Therefore, this court has jurisdiction pursuant to 29 U.S.C. § 185(a).[1] This case is presently before the court on plaintiff's motion to set aside the arbitrator's award. Below are the pertinent facts involved:

### I.

Plaintiff, Local Union 1470 of the United Mine Workers of America, and defendant,

1. Title 29 U.S.C. § 185(a) states:

   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. The pertinent provisions of the Agreement are stated below:

   ARTICLE 1A—SCOPE AND COVERAGE
   Section (a)   Work Jurisdiction
   The production of coal, including removal of overburden and coal waste, preparation, processing and cleaning of coal and transportation of coal (except by waterway or rail not owned by Employer), repair and maintenance work normally performed at the mine site or at a central shop of the Employer and maintenance of gob piles and mine roads, and work customarily related to all of the above shall be performed by classified Employees of the Employer covered by this Agreement. Contracting, sub-contracting, leasing and subleasing, and construction work, as defined herein, will be conducted in accordance with the provisions of this Article.
   Nothing in this section will be construed to diminish the jurisdiction, express or implied, of the United Mine Workers.
   ARTICLE XVII—SENIORITY
   Section (a)   Definition of Seniority

Clinchfield Coal Company, are signatories to the National Bituminous Coal Wage Agreement of 1978 (hereinafter referred to as the Agreement). By Order of this court on February 14, 1979, this is the controlling contract in the present case.

The dispute arose when thirteen laboratory employees, who are members of Local 1470 and normally worked at defendant's Moss # 1 Preparation Plant, were laid off. Defendant justified this action by stating that only employees of Local 8939 were in the bargaining unit at Moss # 1 and, therefore, members of Local 1470 did not have the seniority required for preferential treatment under the layoff procedure.[2]

In the arbitrator's decision,[3] it was held that seniority under the Agreement is determined by service *at the mine*, rather

Seniority *at the mine* shall be recognized in the industry on the following basis: length of service and the ability to step into and perform the work of the job at the time the job is awarded.
In awarding bids on job postings, the parties agree that management will not show favoritism or discrimination. To help senior Employees achieve promotions, they shall be given preference to the extent practicable in the filling of temporary vacancies as set out in section (c) of Article XIX (Classification).
Section (b)   Reduction of Work Force
In all cases where the working force is to be reduced, Employees with the greatest seniority *at the mine* shall be retained provided that they have the ability to perform available work.
Section (c)   Layoff Procedure
In all cases where the working force is to be reduced or realigned, management shall meet with the mine committee at least 24 hours in advance and review the available jobs and the individuals to be laid off, retained or realigned.
Within five (5) days after an Employee is notified that he is to be laid off, he must fill out a standardized form and submit it to mine management. On this form, the laid-off Employee shall list: (1) his years of service *at the mine*; . . . ."
Emphasis added.

3. Plaintiff first filed a civil action in this court but, by Order of February 14, 1979, the cause was remanded for arbitration.

than service in a particular local.[4] However, due to a 1966 contract between defendant and the U. M. W. A., samplers, weighmen, and laboratory technicians became members of their own bargaining unit that was chartered as Local 1470. As the arbitrator observed,

> [t]his created a situation where the Samplers, Weighmen and Laboratory Technicians were assigned to and were working at different mines without being a member of the Union at the mine and were acquiring seniority in a local union rather than at the mine. This also created a situation where a local union, separate than the one at the mine, was given exclusive jurisdiction over the three classifications of Samplers, Weighmen and Laboratory Technicians and was creating seniority by classification rather than at the mine. This was creating a situation where only the employees of a local union would have bidding rights when one of these jobs became vacant. This makes the local union into a craft organization which is entirely different from the Industrial Union of the United Mine Workers of America. Therefore, all of the foregoing is contrary and in conflict with the provisions of the current National Bituminous Coal Wage Agreement of 1978 and prior coal wage agreements.

*Local Union 1470 v. Clinchfield Coal Co.,* Arb.Dec. June 14, 1979; p. 8.

Following the above rationale, the arbitrator ruled that members of Local 1470 do not have seniority at Moss # 1 and, therefore, defendant did not violate the Agreement in its layoff procedure. Also, the arbitrator declared the 1966 contract void as it violated the express provisions of the Agreement, Article XVII.[5] However, as affirmative relief, the arbitrator ordered plaintiff employees to "transfer their seniority accumulated in Local Union 1470 into the local of the mine where they work which will enable them to have and establish seniority at the mine rather than by classification." *Local Union 1470,* Arb.Dec. June 14, 1979; p. 11. By this order, it is implicit that the members of Local 1470 are required to be members of the local union at the mine where they work.

Plaintiff complains that the arbitrator exceeded his jurisdiction in granting this award and, therefore, it should be set aside. Defendant responds that the award should be upheld because it "draws its essence" from the Agreement.

## II.

In a recently decided case, *Keen Mountain Construction Co. v. Chambers,* 481 F.Supp. 532 (W.D.Va. 1979), this court considered the scope of juridical review over an arbitrator's award defined as "final" in the underlying collective bargaining agreement.[6] Generally,

> the interpretation of the Agreement is within the province of the arbitrator and the court is not to tamper with the award unless the arbitrator has exceeded the jurisdiction granted him in the Agreement. After all, "[i]t is the arbitrator's construction which was bargained for; . . . the courts have no business overruling him because their interpretation of the contract is different from his."

*Id.* at 536 (citations omitted).

Arbitration is viewed as a continuation of collective bargaining, with great deference allowed an arbitrator to create a common law of the shop. The wide latitude of an arbitrator's authority is especially prominent when it comes to formulating remedies. In fact, when "the agreement is silent as to remedies, the fashioning of an appropriate remedy is not an addition to the

---

4. See the emphasized portions of note 2, *supra.*

5. *See* note 2 *supra.*

6. Article XXIII, §(c)(3), of the Agreement states in part:
   The arbitrator's decision shall be final except as provided in the memorandum between the

parties dealing with continuance of the Arbitration Review Board, . . . . .
In an Order of this court dated February 14, 1979, it was agreed that neither party would appeal the arbitrator's award to the Arbitration Review Board. Hence, the award is considered "final" by the Agreement.

obligations imposed by the contract." *Keen Mountain,* at 536, *citing, Tobacco Workers International Union v. Lorillard Corporation,* 448 F.2d 949, 956 (4th Cir. 1971).

The standard that is used to judge when an arbitrator has exceeded his jurisdiction is whether the award is drawn from the "essence" of the Agreement. Several tests have been developed to construe the "essence" standard, but only two tests are applicable to the case at bar. Those tests are best stated as: "(1) an award cannot be contrary to the express language of the Agreement; and, (2) an award will not be enforced if there is no rational way the arbitrator's interpretation can be construed from the Agreement." *Keen Mountain,* at 537.

### III.

In light of the above law, this court upholds the arbitrator's finding that members of Local 1470 did not acquire seniority at Moss # 1 and, therefore, the defendant's layoff procedure was valid. The arbitrator's decision is based upon an interpretation of the phrase "at the mine" which is conditional of seniority in the Agreement, Article XVII. *See* note 2 *supra.* So, the essence standard is satisfied because it is rational to construe "at the mine" to be synonymous with a bargaining unit exclusively formed for a particular mine, *e. g.,* Local 8939, rather than a bargaining unit centrally formed for several mines, *e. g.,* Local 1470. It follows that the 1966 contract which attempts to give Local 1470 exclusive jurisdiction over certain classifications is void to the extent that it concerns seniority rights because it violates the Agreement's express mandate that seniority is only to be acquired "at the mine."

However, this court vacates any suggestion in the arbitrator's award that members of Local 1470 are required to transfer their membership or seniority at the mine. The interference with internal union affairs, such as forming locals, is in contravention of an express provision of the Agreement[7] and accordingly fails to meet the essence standard. Of course, the question would be entirely different if the union requested such a transfer.

In the final analysis, this court upholds the arbitrator's finding that members of Local 1470 did not acquire seniority at Moss # 1, but vacates any required transfer of seniority or membership and limits the arbitrator's voidance of the 1966 contract to only the seniority aspects of this case. The court realizes that this opinion raises grave doubts as to the status of Local 1470. However, it is not within the arbitrator's or court's province to interfere with such a basic premise of the union's jurisdiction as the organization of locals. That is the sole responsibility of the union. This court will only review the validity of an arbitrator's decision as it relates to a particular factual dispute, *e. g.,* the seniority rights of Local 1470 members at Moss # 1. But, under the proper circumstances, an arbitrator may order a transfer of seniority from one local to another as affirmative relief only if the union requests such and, thereby, waives its jurisdiction.[8]

Two other issues raised must be addressed: First, plaintiff argues that the arbitrator exceeded his authority by going beyond the dispute submitted. (Article XXIII, §(c), states in part: "The arbitrator's decision . . . shall govern only the dispute before him.") This court disagrees. The submitted dispute dealt with seniority rights of Local 1470 members at a mine where another local was established. The transfer, not submitted for arbitration, was a remedy that this court found was in

---

7. Article IA § (a), of the Agreement, states in part:

    Nothing in this section will be construed to diminish the jurisdiction, express or implied, of the United Mine Workers.

8. In the proper factual setting, a union request to transfer seniority or membership from one union to another could be given effect in an arbitration award because of the great deference allowed an arbitrator in formulating remedies, *see Keen Mountain,* at 536, and the request could act as a waiver of the union's jurisdiction. But, absent a union request, an arbitrator cannot reorganize a union's locals.

direct contravention of an express provision of the Agreement. An arbitrator's remedy will not be vacated merely because the possibility of it was not submitted by the parties. This point is highlighted by the fact that an arbitrator may fashion a remedy never before employed. *See Keen Mountain*, at 536–537.

Also, plaintiff contends that the arbitrator is bound by a previous arbitration decision dated September 13, 1972. But, as the arbitrator points out, the earlier decision was rendered "under the provisions of past practices and customs that were in effect at that time." *Local Union 1470*, Arb.Dec. June 14, 1979; p. 9. Since the arbitrator found these past customs in conflict with the Agreement, he can properly abolish them and rule in contravention of a past decision. *See* Agreement, Art. XXVI, §(b). Therefore, plaintiff's contention is without merit.

Therefore, it is ORDERED that this case be and the same is hereby remanded to the Arbitrator to consider such further matters which may be requested by either party in light of this court's opinion, or for any other relief deemed proper by the Arbitrator.

