**UNITED MINE WORKERS OF AMERICA DISTRICT 28 and Local Union 8017, Plaintiffs,**

v.

**FLATGAP MINING COMPANY, INC., Defendant.**

Civ. A. No. 78–0244–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Feb. 25, 1980.

Dennis W. Heileman, Tazewell, Va., for plaintiffs.

Robert T. Winston, Mullins, Winston & Roberson, Norton, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is presently before the court on plaintiffs' and defendant's cross motions for

summary judgment. The subject of this action concerns an alleged violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce. Therefore, this court has jurisdiction pursuant to 29 U.S.C. § 185(a).[1] Below are the pertinent facts.

## I.

Plaintiffs, the United Mine Workers of America and Delmer Ray Gardner (a Union member), and defendant, Flat Gap Mining Company (a member of the Association of Bituminous Contractors), are signatories to the National Bituminous Coal Wage Agreement of 1978 (hereinafter the Agreement). For the purposes of this dispute, the parties are bound by the Agreement.

On August 7, 1978, one of defendant's employees, Mr. Gardner, filed a grievance alleging that defendant was in breach of the Agreement with regard to certain seniority rights.[2] Defendant violated the Agreement, it is contended, by refusing to arbitrate the grievance under the procedure set out in the contract. For relief, plaintiffs seek an injunction ordering this grievance to arbitration.

In its answer and brief, defendant relates that the seniority issue arose at a mine site leased from Penn Virginia Corporation and that the dispute concerns seniority accrued while Mr. Gardner was an employee at the same mine site with a previous lessee, the Old Ben Coal Company. Defendant also contends that prior to hiring any of Old Ben's former employees, it and the Union's local entered a contract that absolved defendant of any obligations arising from the Union members' employment at the mine site with Old Ben. Specifically, as regards this case, it is alleged that the contract provided that all employees would start with the same seniority, regardless of seniority accrued at the same mine site under the Old Ben lease. Defendant relies upon this separate local contract in refusing to arbitrate. Furthermore, the refusal to arbitrate is purportedly justified by the defendant on the grounds that an express provision of the Agreement bars the grievance because of late filing as provided in the National Bituminous Coal Wage Agreement of 1978, as follows:

> Any grievance which is not filed by the aggrieved party within (10) working days of the time when the Employee reasonably should have known it, shall be denied as untimely and not processed further.

Agreement, Article XXIII, § (d).

Additionally, defendant has filed a counterclaim seeking damages resulting from plaintiffs' alleged "flagrant violations" of the Wage Agreement and the local contract entered into by the parties.

## II.

The central issue in this case concerns the parameters of an arbitrator's authority to settle disputes under the Agreement's grievance procedure. Cast in terms of deciding the validity of an arbitrator's award,

> [t]he short answer to this issue is that the interpretation of the Agreement is within the province of the arbitrator and the court is not to tamper with the award unless the arbitrator has exceeded the jurisdiction granted him in the Agreement. After all, "[i]t is the arbitrator's

1. Title 29 U.S.C. § 185(a) states:
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. Another employee of defendant, Charles T. Kiser, filed a similar grievance on August 28, 1978. However, Mr. Kiser was dismissed from this action by Order of this court on October 3, 1979.

construction which was bargained for; . . . the courts have no business overruling him because their interpretation of the contract is different from his." *Keen Mountain Construction Company v. Chambers*, 481 F.Supp. 532, 536 (W.D.Va. 1979).

Similarly, the same principles apply to the case at bar. If a party refuses to arbitrate a dispute that concerns interpretation of the Agreement, then the court will order the parties to arbitration. In other words, if a dispute can be resolved under an interpretation of the Agreement, it is arbitrable. Also, unless modified by the Agreement, it is the court's duty to determine whether an issue is arbitrable under the Agreement. *See Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972).

All of the issues raised by plaintiffs are arbitrable under the Agreement. Given the broad range of issues subject to the Agreement's arbitration clause,[3] disputes over seniority rights are arbitrable. *See United Steelworkers of America v. American Manufacturing Company*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Also, defendant's contention that the contract between it and the local nullifies plaintiffs' claim, and prevents arbitration, is without merit. The Agreement, Article XXVI, § (b), states that "[w]henever a conflict arises between this Agreement and any District or local agreement, this Agreement shall prevail." It is within the arbitrator's jurisdiction, and not the court's to interpret this provision as it affects the validity of the local contract. Finally, defendant is not justified in its refusal to arbitrate because plaintiffs filed their grievance too late. "Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). *See also Operating Engineers*, 406 U.S. at 490, 92 S.Ct. at 1712 (held that the procedural questions discussed in *Wiley* included timeliness of processing a grievance).[4]

Having ruled that defendant's refusal to arbitrate is without merit, it is ORDERED that plaintiffs' injunction is granted and the parties are directed to arbitration. Since plaintiffs' attempt at arbitration and the filing of this suit are not "flagrant violations of the Agreement," defendant's counterclaim is dismissed. Plaintiffs' motion for attorney's fees is denied.

---

**3.** Arbitration is a step set out in the grievance procedure under the Agreement, Article XXIII, § (c). Disputes subject to the grievance procedure are "differences . . . as to the meaning and application of the . . . Agreement, or . . . differences . . . about matters not specifically mentioned in [the] Agreement, or . . . any local trouble of any kind . . . at the mine."

**4.** In the proceedings of this case, a successorship issue was raised with regard to the transfer of machinery and personnel from Old Ben Coal Company to Flatgap Mining Company. However, in their briefs, the parties agree that this issue is not necessarily pertinent to a decision in this case at this point. This court concurs with that conclusion. Since a duty to arbitrate has been found, regardless of successorship, that issue need not be decided. This is not to say that the issue may not be raised in subsequent proceedings.