WESTMORELAND COAL COMPANY, a corporation, Plaintiff,

v.

UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION, DISTRICT 28, United Mine Workers of America, and Local Union 8181, United Mine Workers of America, Defendants.

Civ. A. No. 82–0251–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Oct. 25, 1982.

Roger A. Wolfe, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., Scott L. Messmore, Big Stone Gap, Va., for plaintiff.

Gerald F. Sharp, Castlewood, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is presently before the court on plaintiff's and defendants' cross motions for summary judgment. The subject of this action concerns an alleged violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce. Therefore, this court has jurisdiction pursuant to 29 U.S.C. § 185(a).[1]

## I.

The plaintiff, Westmoreland Coal Company, a Delaware corporation licensed to do business in Virginia, is engaged in the production, preparation, and shipment of coal and has its principal place of business in Wise County, Virginia. The defendant, United Mine Workers of America, International Union, an unincorporated association and labor organization, having its principal office in Washington, D.C., is engaged in representing employees of the plaintiff. The defendants, District 28, United Mine Workers of America and Local Union 8181, United Mine Workers of America, unincorporated associations and labor organizations, are administrative divisions and agencies of the defendant United Mine Workers of America, and have their principal offices in the Western District of Virginia. The parties are signatories to the National Bituminous Coal Agreement of 1981 (hereafter "the Agreement"). For the purposes of this dispute, the parties are bound by the Agreement.

The defendants filed a written grievance with the plaintiff contending that the plaintiff had violated the Agreement by recalling an employee with less seniority before recalling Kenneth Cheek.[2] Unable to resolve the grievance through conciliation procedures, contained in Article XXIII of the Agreement, the dispute was submitted for an arbitration hearing on April 15, 1982. The arbitrator found the following facts.

On July 31, 1979, Kenneth Cheek (hereinafter the grievant), an employee of the plaintiff, stopped working due to health reasons. On August 31, 1979, the grievant

1. Title 29 U.S.C. § 185(a) states:
   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. Article XVII § (h) provides:
   When a job or training vacancy at a mine exists which is not filled by Employees within the active working force or from the mine panel, the panel custodians will review the list of Employees on the panel from other mines and the Employer shall recall to employment Employees on layoff status in the following order:
   (1) If there are no Employees on the mine panel with the ability to perform the work of the job, then, the Employer shall recall the senior Employee who has such ability from the Employer's other mines within the same UMWA district who has requested his name to be placed on the panel at that mine and

has listed the job to be filled as one for which he wishes to be recalled (length of service with an Employer at a mine for purposes of this provision includes total years of service with the Employer within the UMWA district);
   (2) If there are no Employees on the mine panel or the District-Employer panel, who have the ability to perform the work of the job, then, the Employer shall recall the senior Employee from the Employer's other mines outside the UMWA District where the mine is located who has such ability and is entitled to under section (c)(6) and has requested his name to be placed on the panel at that mine and has listed the job to be filled as one for which he wishes to be recalled (length of service with the Employer at the mine for purposes of this provision includes total years of service with the Employer).
   Signatory companies and coal producing subsidiaries and wholly owned and controlled coal producing affiliates, shall be treated as one and the same Employer for panel rights purposes.

was officially laid-off. It is unclear from the record whether this lay-off was due to the grievant's health problems. On August 31, 1979, the grievant submitted a panel form to be recalled should there be an opening for General Inside Labor or various other jobs. It is the plaintiff's company policy that an employee laid-off due to an injury or illness must present proper medical evidence of fitness for work in order to be recalled. The arbitrator specifically found that the grievant was aware of this policy. The grievant's physician notified the plaintiff by letter that the grievant should be able to return to work on September 4, 1979; however, this letter was not an official work release.

The grievant attended college full time from September 1979 through June 10, 1980 and received Veterans' benefits during this time. On June 11, 1980, the grievant filed an unemployment claim for which the grievant supplied medical evidence of his ability to return to work. The plaintiff learned of the grievant's unemployment claim and, therefore, knew of his availability for work as of June 11, 1980. The arbitrator found that the grievant was officially available for work and that grievant should have been on the job panel as of that date. The plaintiff did not place the grievant on the job panel until September 16, 1981.

In January 1982, the grievant alleges that he discovered that an employee more junior than he had been called back to General Inside Labor on February 6, 1980; hence, the basis of his grievance. The arbitrator noted that "I have no way of knowing whether the junior recalled employee did, in fact, provide the basis for this grievance because his panel form was not submitted on time."

In his May 7, 1982 award, the arbitrator held:

The Company and International Union Representatives are directed to review and, if possible, agree on the list of jobs for which the grievant was eligible for recall pursuant to his ability and his Panel form. The Company should then re-view its recall records to determine if any employee junior to the grievant was recalled to one of those agreed to jobs after June 10, 1980. The contract does not give the grievant bumping rights on those junior employees recalled prior to his availability. If so, the grievant is entitled to be reimbursed for the time he would have worked and all other monies he would have received for that job between the date of that recall and September 16, 1981, but with the amount[s] of money he received from Workmen's Compensation, or Unemployment Compensation, or from employment for wages received during this period deducted therefrom.

If the Parties cannot agree upon the job to which the grievant may have been recalled after June 10, 1980 through December 31, 1980, or if there was no such job nor any such recall, this case shall be returned to the arbitrator for the setting of a date because of the Company's negligence in administering Article XVII of the Wage Agreement.

On May 7, 1982, the arbitrator entered the following Supplemental Award:

After the Company and the Union reviewed the records, there were no employees younger than the grievant who were recalled after June 10, 1980 through December 31, 1980. This is due to the fact other mines paneled to this complex and all those paneling were senior to the grievant.

The grievant was not responsible for the loss of opportunity due to paneling of the employees from other mines. It was found this Company was remiss in not calling the grievant originally (February 6, 1980) and the arbitrator has stated he will set the penalty. Accordingly, the grievant shall be paid 1,730 hours of straight time pay at his rate of pay as a final resolution of this case.

## II.

The issue currently in dispute is whether the arbitrator exceeded his statutory and contractual authority in awarding the

grievant punitive damages. The plaintiff, noting that the arbitrator characterizes the award as a penalty, argues that the award is punitive in nature and that the purpose of the award is to reprimand the plaintiff for being remiss in its recall procedures. The defendants argue that the award is not a penalty, but rather is intended to compensate the grievant for the plaintiff's failure to recall him on February 6, 1980.

Central to this case is the scope of judicial review over an arbitrator's award which is considered "final" by the underlying collective bargaining agreement. In the *Steelworkers' Trilogy*, a set of three decisions rendered by the United States Supreme Court on the same day, the Court considered the parameters of an arbitrator's authority to render such awards and the proper role of the federal courts in reviewing such awards. *See United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403.

■ The interpretation of the Agreement is within the province of the arbitrator and the court is not to tamper with the award unless the arbitrator has exceeded the jurisdiction granted him in the Agreement. After all, "[i]t is the arbitrator's construction which was bargained for; . . . the courts have no business overruling him because their interpretation is different from his." *Enterprise Wheel*, 363 U.S. at 593, 80 S.Ct. at 1362. *See also Crigger v. Allied Chemical Corporation*, 500 F.2d 1218, 1219 (4th Cir.1974); *Keen Mountain Construction Co., Inc. v. Chambers*, 481 F.Supp. 532, 536 (W.D.Va.1979).

An arbitrator may not, however, exceed the power granted to him by the Agree-

ment. This jurisdictional limitation reflects the basic principle of arbitration that an arbitrator "does not sit to dispense his own brand of industrial justice" and "his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Several tests have been developed to construe the "essence" standard, but only two tests are applicable to the case at bar. Those tests are best stated as "(1) an award cannot be contrary to the express language of the Agreement; and, (2) an award will not be enforced if there is no rational way the arbitrator's interpretation can be construed from the Agreement." *Keen Mountain*, 481 F.Supp. at 537. *See also Local Union 1470, Etc. v. Clinchfield Coal Co.*, 483 F.Supp. 1302, 1305 (W.D.Va.1980). If an arbitrator exceeds his jurisdiction in making an award, the court is empowered to vacate such award pursuant to 9 U.S.C. § 10(d).[3]

In the present case, the arbitrator awarded the grievant 1,730 hours of back pay as a "penalty." In *Norfolk & Western Railway Co. v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees*, 657 F.2d 596 (1981), the Fourth Circuit recently held that absent a contrary provision in the Agreement, an arbitrator could not make an award of purely punitive damages to remedy a violation of a collective bargaining agreement. "[U]pon the finding of a violation, an arbitrator should be given virtually unlimited latitude in fashioning a remedy . . . however, nothing said in *Enterprise Wheel* negates the requirement that compensatory damages be based upon cognizable loss causally traceable to breach." 657 F.2d at 602, quoting *Baltimore Regional Joint Board v. Webster Clothes, Inc.*, 596 F.2d 95 (4th Cir.1979). *See also Westinghouse Electric Corp., Aerospace Division v. International Brotherhood of Electric*

---

**3.** 9 U.S.C. § 10 states:

In either of the following cases the United States Court in and for the district wherein the award was made may make an order vacating the award upon the application of

any party to the arbitration . . . (d) [w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

**1048**

Workers, AFL–CIO, 561 F.2d 521 (4th Cir. 1977).

In the present case, the arbitrator's award is punitive in that the grievant suffered no cognizable loss. Even if the plaintiff breached the agreement in failing to call the grievant back to work on February 6, 1980, the arbitrator found that the grievant was unable to work on this date; therefore, the grievant suffered no loss. In addition, the arbitrator clearly characterizes the award as punitive in the supplemental award. The arbitrator's award of damages does not draw its essence from the bargaining agreement, for the agreement's essence does not contemplate punitive, but only compensatory awards. In the absence of any provision for punitive awards, and of any substantiating proof of willful or wanton conduct, an arbitrator may not make an award of punitive damages for breach of a collective bargaining agreement. *Baltimore Regional Joint Board v. Webster Clothes, Inc.*, 596 F.2d 95 (4th Cir.1979). *Westinghouse Electric Corp., Aerospace Division v. IBEW, Local 1805*, 561 F.2d 521 (4th Cir.1977). *See also Local 127, United Shoe Workers v. Brooks Shoe Mfg. Co.*, 298 F.2d 277 (3d Cir.1962). There being no provision in the agreement here for an award of punitive damages, the arbitrator's award is not sustainable. Accordingly, plaintiff's motion for summary judgment is hereby granted and defendants' motion for summary judgment is hereby denied.