**ISLAND CREEK COAL COMPANY,**
**Plaintiff,**

v.

**LOCAL UNION 1640, United Mine**
**Workers of America, et al,**
**Defendant.**

**Civil Action No. 96–0185–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Sept. 8, 1998.

Mary Lynn Tate, Abingdon, VA, for Plaintiff.

Daniel H. Sachs, UMWA, Castlewood, VA, for Defendants.

## ORDER

GLEN M. WILLIAMS, Senior District Judge.

For the reasons stated in the memorandum opinion entered this day, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment is GRANTED as it pertains to work performed on March 10, 1996 and Defendant's Motion for Summary Judgment is DENIED as it pertains to such; Defendant's Motion for Summary Judgment is GRANTED as it pertains to work performed on March 9, 1996 and Plaintiff's Motion for Summary Judgment is DENIED as it pertains to such; final judgment shall be entered forthwith and this case shall be stricken from the docket.

The Clerk is directed to send certified copies of this Order to all counsel of record.

## *MEMORANDUM OPINION*

### I. Introduction

On November 27, 1996, Plaintiff filed the instant action in this court, seeking to vacate an arbitration decision it alleges was not based on the terms of the parties' collective bargaining agreement, and was instead made arbitrarily and capriciously. Defendants filed a cross-claim seeking enforcement of the arbitrator's decision on January 14, 1997. Cross-motions for summary judgment are now pending. This court exercises jurisdiction pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. For the following reasons, the court grants the Plaintiff's motion in part and denies the Defendant's motion in part, and grants the Defendant's motion in part and denies the Plaintiff's motion in part.

### II Background

The Plaintiff, Island Creek Coal Company (hereinafter, Island Creek), is a Delaware corporation, licensed to do business in the Commonwealth of Virginia, where it produces, prepares and ships bituminous coal. Island Creek employs members of the Defendants, Local Union 1640, United Mine Workers of America, and District 28, United Mine Workers of America (collectively, hereinafter, Union). Both Defendants are unincorporated associations. The Union is the exclusive bargaining agency for its members in negotiating collective bargaining agreements. At all times relevant to this dispute, the parties were signatories to a collective bargaining agreement known as the National Bituminous Coal Wage Agreement of 1993 (hereinafter, Agreement). The Agreement sets forth procedures for settling labor disputes which arise between the parties, such as the dispute at issue in this case.

The dispute giving rise to this action began at the company's VP #3 mine in Buchanan County, Virginia, in the Western District of Virginia, in March 1996. On Friday, March 8, 1996, Island Creek received a Notice of Violation from an inspector of the Commonwealth of Virginia, due to a problem with surface water run-off at its mine. Unless the problem was solved, and the Notice abated, by 10:30 AM on Monday, March 11, 1996, the mine would be closed. Island Creek decided to install a pump to correct the problem, and contracted with the non-Union affiliated K & K Construction (hereinafter, K & K) for the installation of the pump. Four employees of K & K completed the necessary work on Saturday, March 9 and Sunday, March 10, 1996, and Island Creek received approval to continue operations after an inspection later on March 10, 1996.

Three members of the union, Russell Deel, Bob Belcher and Barry Jessie (collectively, hereinafter, grievants), filed a grievance on March 11, 1996, alleging that the contracting out of work to K & K was a violation of the Agreement. The grievants asserted that the work contracted out to K & K was the type of work customarily performed by classified

employees, such as themselves, and requested payment for eight shifts of work. The grievance was denied by Island Creek, and was then arbitrated by arbitrator Norman R. Harlan, who held a hearing on the matter on August 8, 1996. On September 6, 1996, arbitrator Harlan ruled for the grievants and issued an award, granting both Belcher and Jessie pay at the applicable contractual rate for 14 hours of work. The arbitrator awarded three hours of pay to Deel.[1]

Arbitrator Harlan's stated reasons in support of his decision were two-fold. Arbitrator Harlan first concluded that the work performed by K & K was not construction work, but rather was maintenance work of the type normally done by classified employees of the mine, such as the grievants.[2] He further found that Island Creek did not notify the union of the emergency nature of the work that needed to be done.[3]

Island Creek contended in arbitration before arbitrator Harlan, and contends before this court, that the work in question was construction work. If it were construction work, the company could contract it out to non-Union members only when "all ... [e]mployees with necessary skills to perform the work are working no less than 5 days per week...."[4] The arbitrator stated that "[i]t is apparent the work in question ... is clearly maintenance work."[5]

The arbitrator found that Island Creek did not notify the Union, nor any of its individual members, of the emergency work to be undertaken. Rather, it simply contracted the work out to K & K, without offering work to the Union member employees. Harlan noted

that one grievant testified he would have worked additional hours in an emergency situation, and concluded that "[t]here is no way to determine how many employees would have worked if they had known about the Notice and the pending closure order."[6]

## III. Legal Discussion

### (A) Summary Judgment Standard of Review

A party moving for summary judgment will have its motion granted if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. In considering a grant of summary judgment, the court may consider the pleadings, depositions, answers to interrogatories, and admissions on file, as well as any affidavits filed with the court. FED. R.CIV.P. 56(c). The court must view the evidence under consideration in the light most favorable to the non-moving party. *Cuddy v. Wal–Mart Super Ctr., Inc.*, 993 F.Supp. 962, 965 (W.D.Va.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### (B) Judicial Review of an Arbitrator's Decision

 Arbitration decisions are given great deference on review by federal courts, so as to encourage the use of arbitration as a means of resolving disputes. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 577–8, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (citing *Textile Workers Union of America v. Lincoln Mills*

1. Harlan found that the employees of K & K worked "10–12 hours" on both March 9 and 10, and thus based any payment due the grievants on an 11–hour workday. All three grievants worked eight hours on March 9, and Harlan concluded that each was entitled to receive three hours of pay for that day in order to allow them to receive the monies they could have received had they done the work performed by K & K. Belcher and Jessie did not work at all on March 10, and thus were each awarded pay for eleven hours that day, to allow them to receive the monies they would have received had they worked the same hours as the employees of K & K. Harlan awarded Deel no payment for March 10, because Deel worked 11 3/4 hours that day—more than he would have worked on the job contracted out to

K & K. Harlan concluded that any payment to Deel for March 10 would constitute an impermissible award of punitive damages.

2. *District 28, United Mine Workers of America, Local Union No. 1640*, Arbitration Case No. 93–28–96–165, at 8.

3. *Id.*, at 9.

4. National Bituminous Coal Wage Agreement of 1993, Article IA, Section i.

5. *District 28*, at 8.

6. *Id.*, at 10.

*of Alabama,* 353 U.S. 448, 453–454, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). The arbitrator is entitled to make factual determinations and to construe the contract as agreed to by the parties. *United Paperworkers Int'l Union, et al. v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Review of an arbitration decision is still proper, however, to ensure that the arbitrator has correctly carried out his duties, and that the award issued by the arbitrator "draws its essence" from the parties' agreement. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

 This court has previously stated that in determining if an award draws its essence from the parties' contract, it is important to look at the express language of the contract and to determine if there is some "rational way the arbitrator's interpretation can be construed from the Agreement." *Westmoreland Coal Co. v. United Mine Workers of America, et al,* 550 F.Supp. 1044, 1047 (W.D.Va.1982) (citing *Keen Mountain Constr. Co., Inc. v. Chambers,* 481 F.Supp. 532, 537 (W.D.Va.1979)). If the arbitrator is "even arguably construing or applying the contract," his award will be upheld. *Paperworkers,* 484 U.S. at 38, 108 S.Ct. 364. However, the arbitrator may not impose additional terms to the bargained-for agreement in an attempt to impose his own sense of industrial justice. *Id.*

**(C) Legal Analysis**

Island Creek contends that arbitrator Harlan exceeded the scope of his authority in rendering his decision in this matter. It asserts that the arbitrator's decision does not draw its essence from the bargained-for Agreement of the parties, and rather is based upon his own sense of right and wrong. The court agrees with the company as to a portion of arbitrator Harlan's award. However, his award will be enforced to the extent it was justified by the terms of the Agreement.

What the Union is entitled to, pursuant to the terms of the Agreement which it negotiated with the Bituminous Coal Operators Association, Inc., is to generally not have any repair or maintenance work—emergency or non-emergency—contracted out to non-Union workers unless there are no "regular [e]mployees ... with necessary skills available to perform the work at the mine or central shop." Agreement, Article IA, Section g(2).[7] This language is plain and clear, and this court must examine it to see if arbitrator Harlan's award is "contrary to the express language of the Agreement ... [or] if there is no rational way the arbitrator's interpretation can be construed from the Agreement." *Westmoreland,* 550 F.Supp. at 1047.

**(1) March 9, 1996 Work**

██ Harlan awarded all three grievants three hours of pay for March 9. Three hours is the difference between the hours each worked that day and the hours they could have worked on the job contracted out to K & K. This portion of the arbitrator's award will be enforced by this court, although the court is troubled by the way in which it was reached.

Nowhere in his nine-page opinion did arbitrator Harlan reference the contracting out provisions of Article IA, Section i of the Agreement. Instead, he merely found that Island Creek's failure to inform the Union of emergency work entitled Union members to be paid for work which Union members could have performed. By ignoring the plain language of the Agreement and failing to discuss its applicability, Harlan has "manifest[ed] an infidelity to ... [his] obligation...." *Clinchfield Coal Co. v. District 28, United Mine Workers of America, et al.,* 720 F.2d 1365, 1368 (citing *Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. 1358). Ordinarily, this would mean that the court would have no choice but to refuse to enforce the arbi-

7. The company contended in arbitration before Harlan, and contends before this court, that the work in question was construction work. This court, in reviewing the instant matter, is bound by the factual determinations of the arbitrator— including the classification of work performed. *See United Paperworkers,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286. Thus, Article IA, Section i of the agreement, dealing with construction work, is inapplicable to this dispute.

trator's award.[8] *Id.* However, there is some "rational way the arbitrator's interpretation can be construed from the Agreement," *Westmoreland,* 550 F.Supp. at 1047 (citing *Keen Mountain,* 481 F.Supp. 532, 537), thereby allowing this court to enforce a portion of the award.

The arbitrator could rationally have reached his decision with reference to the Agreement, accompanied by a relevant decision of the Arbitration Review Board (hereinafter, ARB). The Agreement explicitly provides that:

> All decisions of the Arbitration Review Board rendered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential effect under this Agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this Agreement.[9]

Decision 78–45 of the ARB was filed by the Union with this court and there has been no evidence presented to this court that would lead us to conclude that changes in the Agreement have affected the precedential effect of the decision. In the decision, the ARB found that a "reasonable availability" test was appropriate when determining whether employees who had worked their normal hours were available for additional necessary work, even if such additional work would be performed at premium pay rates for the employees. The ARB concluded that the availability of employees should be measured by the reasonableness of having them work additional hours.[10] The "reasonable availability" test is not met then if the employee's fatigue would impair their efficiency or skill.[11]

There is no evidence that any of the grievants was fatigued after working eight hours on March 9. All three grievants had worked at least their normal hours.[12] Thus, the ARB decision which has the same authority as the language of the Agreement—requires that the grievants be considered "available." The arbitrator found all three grievants to be qualified to do the installation work, and since they had just finished their regular day of work, they were still "at the mine or central shop." *See* Agreement, Article IA, Section g(2). Thus, contracting out of work under these circumstances was impermissible under the plain language of the Agreement, and the grievants are entitled to three hours of pay at the applicable contractual rate for work they should have been given an opportunity to perform on March 9, 1996.

**(2) March 10, 1996 Work**

■ Under the Agreement, work on the seventh consecutive day of a mine's production is optional. Agreement, Article IV, Section d(2). The arbitrator found that Island Creek had been engaged in production of coal for the six days preceding March 10. Harlan further concluded that the grievants were qualified to perform the work. These factual findings will not be disturbed on review by this court, and must guide our decision. *Paperworkers,* 484 U.S. at 37–38, 108 S.Ct. 364.

Taking advantage of the seventh-consecutive day provision of the Agreement, 231 of the company's 257 classified employees—including Belcher and Jessie—elected to take March 10 off. All had been scheduled by the company to work that day, and thus would have been "available" to work had they reported to the mine that day. By not reporting to work, Belcher and Jessie made themselves unavailable under the Agreement, since while not at work they were not "available . . . at the mine or central shop,"[13] as required by the plain language of the Agreement. Both elected to exercise their right to not report to work on March 10, and that

---

8. As the court must do with regard to that portion of the award attributable to March 10, 1996.

9. Agreement, Article XXIII, Section k.

10. *Old Ben Coal Co., Benton Central Shop,* Arbitration Review Board Decision 78-45, at 2 (1980).

11. *Id.,* at 4.

12. The basic work day, under the agreement, is either seven and one-quarter hours and eight hours, depending on whether an employee is classified as an "outside employee" or an "inside employee." Agreement, Article IV, Section b.

13. Agreement, Article IA, Section g(2).

election ultimately resulted in there being no qualified classified employees available at the mine to install the pump. The Agreement does not contemplate that the company attempt to notify the 231 employees who choose not to work, nor must it notify the Union, in cases of emergency.[14] The part of the arbitrator's decision based on a requirement of notification finds no basis in the agreement of the parties, and therefore, does not draw its essence from the agreement. Thus, this court will not enforce it.

The arbitrator found that Deel was entitled to no award for March 10, because any such award would be punitive in nature. The arbitrator was correct in his conclusion, as this court has previously held that "purely punitive damages [are not available] to remedy a violation of a collective bargaining agreement." *Westmoreland*, 550 F.Supp. at 1047. Deel worked more hours than the arbitrator found the employees of K & K Construction to have worked. In *Westmoreland*, this court stated that "compensatory damages be based upon [a] cognizable loss causally related to breach." *Id.*, at 1047 (citing *Norfolk & Western Ry. Co. v. Botherhood of Ry., Airline & Steamship Clerks, Freight Handlers, Express & Station Employees*, 657 F.2d 596, 602 (4th Cir.1981)). Since Deel worked more than the 11 hours the arbitrator found he would have worked installing the pump, and has been paid for his work, he has no "cognizable loss."

(D) Conclusion

The court having found that the arbitrator exceeded his power by ignoring the plain language of the parties' agreement, we find that part of his result was nonetheless rationally related to the bargain of the parties. Thus, that portion of the award, granting pay for March 9, 1996, will be upheld by this court, as will the arbitrator's finding that greivant Deel could not receive an award for March 10, 1996, because such an award would be punitive. The court vacates the remainder of the arbitrator's award. Under the applicable contractual rates of pay, Deel

is entitled to $108.38, Belcher to $107.57 and Jessie to $108.38.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

---

**14.** Lest it be argued that such a requirement of notification was an area the arbitrator was entitled to "fill-in-the-blanks," the agreement specifically provides for arbitration for "[d]isputes arising under this [a]greement," and not for disputes arising out of a failure of the parties to agree about certain matters in their contract. Agreement, Article XXIII, Section c.